JUDGE ELLIOTT
delivered the opinion op the court.
In the year 1850 Thomas Smith departed this life the owner of a large estate. By his will he directed that “all his children are to be made equal, including Lizzie Rowland as one equal with the rest, a sufficient sum to be invested in good securities for her and Elizabeth, my daughter, not to be used — the principal — until they arrive at twenty-six years of age, except the income or interest, say $20,000.”
George J. Rowland was the father of Lizzie Rowland, and after the death of Thomas Smith was appointed her guardian. On the 26th day of February, 1859, N. J. Smith conveyed to George J. Rowland, as guardian and for the benefit of his daughter Lizzie Rowland, five hundred and eighty acres, two roods, and twenty poles of land, of which about four hundred and ten acres are in dispute in this action. On the 29th of January, 1864, Lizzie Rowland, who had then married a Mr. Herndon, and Her husband conveyed four hundred acres of this tract to Harriet Rowland, wife of George J. Rowland, and the balance of it to her father, George J. Rowland.
On the 31st of December, 1867, George J. Rowland and Harriet Rowland conveyed to Mary F. Buford the four hundred acres that had been conveyed to Harriet Rowland and about ten ’acres of the land that had been conveyed to George J. Rowland by Lizzie Herndon and her husband. Mary F. Buford had agreed to give $32,500 for this tract of land, and executed her two notes for $6,250 each as a part of the consideration of her purchase. These notes were afterward assigned to the appellee Guthrie, who instituted a suit in equity to enforce their payment by a sale of the land bought by Mary F. Buford from the Rowlands, as the deed to her reserved a lien for the unpaid purchase-money.
Mary F. Buford answered this suit, and for defense set up a defect of title in her vendors at the time of their sale to her, but insisted on keeping the land if the title to it was good *682 or could be made good, and asked for an exhibition of the title of her vendors, and asserting that she had paid $21,054 of the purchase-money, asked that a lien be .adjudged in her fayor for this sum, if the contract should be rescinded. The appellee obtained a judgment to enforce his lien for the sums sued for, which this court reversed on grounds not touching the merits of the dispute.
In 1873 Mary F. Buford died testate, having devised and bequeathed her entire estate, after the payment of her debts, to her deceased nephew’s widow, Mrs.- Ann O. Wallace, charged, however, with the payment of one hundred dollars per year to Ann M. Wallace during her life.
After the death of Mary F. Buford the action was revived against Thomas Buford, who had been appointed administrator of her estate with the will annexed, and also against Ann O. and Ann M. Wallace, who file their answers, which are made cross-petitions against Harriet Rowland and the heirs of George J. Rowland, he having died, and Lizzie A. Herndon (who had intermarried with Robert Smith) and husband, and N. J. Smith and wife.
In the cross-action of Ann O. Wallace she sets up as defects of title that at the time of the conveyance of N. J. Smith to Geo. J. Rowland, as guardian for his daughter Lizzie, he had a living wife, who failed to join in the conveyance; and it is also asserted that as G. J. Rowland never conveyed this land, as guardian of his daughter Lizzie, the legal title remained in him till his death, and then descended to his heirs, and that his heirs still hold the legal title in trust for Lizzie A. Smith (late Rowland).
It is also charged in the cross-action that, at the time of the purchase, by M. F. Buford, of the land in dispute, G. J. Rowland fraudulently represented that his title to the land was perfect when he knew to the contrary; and that he was insolvent.
In the cross-action it was stated that the deed of Lizzie A. *683 Herndon to Harriett and G. J. Rowland was void, because she had not arrived at the age of twenty-six years, and the land having been conveyed to her father as her guardian and trustee, he could not sell it or convey it, except under the direction of a court of equity.
Similar allegations as to defect of title had been made by Mary F. Buford in her lifetime.
N. J. Smith and M. J. Smith, his wife, on the 24th of March, 1873, and during the progress of this suit, executed and acknowledged their deed to Lizzie A. Smith, late Lizzie Rowland, by which they conveyed to her the land in dispute; and on the 27th of March, 1873, Lizzie A. Smith, late Lizzie A. Rowland, and her husband reconveyed the land in dispute to Harriet Rowland, and in that deed stated that she had been fully paid for the land when she conveyed it away in' 1864; and on the 26th day of April, 1873, Harriet Rowland reconveyed the land to Mary F. Buford by a deed which was tendered to her, and which she refused to receive.
The first question made by appellants is, that this action was not revived against Ann O. Wallace within the time prescribed by law. Mary F. Búford died in December, 1873, and Thomas Buford was appointed her administrator in March, 1874, and in October, 1874, the suit was revived against the administrator by consent; and on the 6th of July, 1875, the suit was revived against Ann O. Wallace and Ann M. Wallace and again another order of revivor was made against the same parties in October, 1875.
The Civil Code of Practice,'by section 567, provided that “Upon the death of a defendant in an action for the recovery of real property only, or which concerns only his rights or claims to such property, the action may be revived against his heirs or devisees, or both, and an order therefor may be forthwith made in the manner directed in the preceding sections of this title.”
*684 This was not an action for the recovery of real property, nor did it concern Mary F. Buford’s right or claim to such property. It was a suit against her administrator and devisee for the collection of a debt and the enforcement of a vendor’s lien for its payment. Her right and claim to the property were conceded, but it was claimed that by the deed which gave her a title to the land, a lien was reserved for the amount of the notes sued on.
By section 568 of the Civil Code it is provided that “ An order to revive an action against the personal representative of a defendant, or against him and the heirs or devisees of the defendant, can not be made, unless by consent, until after six months from the qualification of the personal representative.”
It seems to us that this section applies to the revival of the action in this case, and that although the action was revived by consent as to the administrator of Mary F. Buford, no revivor could have been made as to Ann O. Wallace without her consent, within six months of the appointment of the administrator. The appellant had a right to sue Mary F. Buford’s personal representative and ask a personal judgment for his claim, and he also had a right to join in the action her devisee and ask an enforcement of his lien, and having brought his action against Mary F. Buford in her lifetime, he had a right to bring her personal representative and devisee before the court, and insist on a personal judgment against the personal representative, and an enforcement of his lien against the devisee. No order of revivor could have been made till the October term of the Henry Circuit Court, 1874, and by section 569 of the Code “An order to revive an action against the representatives or successor of a defendant shall not be made without the consent of such representatives or successor, unless in one year from the time it could have been first made.”
As this suit was revived in July, 1875, and also in October, *685 1875, the revivor was certainly had within one year after the time when it could have been made.
On the merits of this case, it is contended by appellants, that the title of George J. Rowland and wife was defective at the date of their conveyance to Mary F. Buford, and that it is still defective. They also contend that if the title to the land in dispxxte is now perfect, the devisee of Mary F. Buford ought not to be compelled to take it, because the title was not perfected for nearly six years after the purchase, during which time it could not be sold because of the notoriety of the defect in the title, and that when the title was perfected the land had fallen from $80 per acre (the price paid) to $40 per acre.
There can be no doubt but that the conveyance of the land in dispute by N. J. Smith to George J. Rowland, guardian of Lizzie A. Rowland, and for her benefit, did not pass his wife’s dower-interest, because she did not join in the conveyance in the body of the deed, but only signed the deed and acknowledged it, which was insufficient to relinquish her dower right, as decided by this court in Prather v. McDowell and wife, 8 Bush, 46, and other cases. But there is no evidence that Geo. J. Rowland knew that N. J. Smith’s wife had to appear as one of the vendors in the body of the deed in order to relinquish her dower interest, and as he then had no real interest in the land, the fair presumption is that he thought he was receiving for his ward a perfect title. At the time of the conveyance by Lizzie Herndon of the land in dispute to Harriet Rowland, she was twenty-one years and about two months old, and married, and had ceased to be the ward of Geo. J. Rowland.
It is true that having been her guardian nearly up to the time of the conveyance to his wife, the burden of proof in a controversy between Geo. J. Rowland and his late ward would have been on him to show that the transaction was perfectly fair, and that Mrs. Herndon had received the full and fair value of her *686 land. But we see no reason why Mrs. Herndon could not sell and convey her interest in the tract of land in dispute. She was under no disability except coverture, and could therefore bind herself by an executed contract for the conveyance of land when acknowledged as required by law. It is true the purchase-price should have been paid over to her trustee, and all but the interest thereof retained by him till she arrived at the age of twenty-six years.
As the conveyance was made to Geo. J. Rowland as guardian of his daughter,- it matters not whether the legal title vested in her when he ceased to be her guardian, for as she, after he so ceased, conveyed all her interest in the land to Harriet Rowland, his wife, and then he and Harriet conveyed all their interest in the land on the 31st of December, 1867, to Mary F. Buford by deed duly acknowledged and recorded, it seems to us that all right, title, and interest of Geo. J. Rowland and wife and Lizzie A. Rowland, afterward Herndon and now Lizzie A. Smith, vested in Mary F. Buford by this deed.
If the legal title to the land in dispute remained in Geo. J. Rowland after he ceased to be guardian of his daughter, he conveyed that legal title by his deed to Mary F. Buford, and as his daughter had conveyed all her interest in the land to his wife Harriet Rowland, that interest passed by her deed to Mary F. Buford.
But suppose that the title was defective, still Mary F. Buford was in possession under an executed contract conveying the land to her, and remained in possession till her death, which possession is still held by her devisee and administrator, with the will annexed, nor had she at her death or her devisee since been evicted from a single acre of the land'.
This court as early as the case of Cotton v. Ward, 3 Mom 313, decided that where the contract is executed, and the vendee is in possession, and the vendor, so soon as apprised *687 of the objection to the title, institutes suit and removes it so as to have his title clear at the hearing, the purchaser must accept it.
When appellee brought suit to enforce his vendor’s lien in this case, Mary F. Buford, who had been in possession some time under her deed, raised objections, by her answer, to the title, and brought all the parties from whom she apprehended danger before the court; and the title from all of those from whom danger was feared, except the heirs of George J. Rowland, is reconveyed to her immediate vendor, and the court below adjudges that her title is perfect, and none of the parties in interest have appealed from the decision. This is not only true, but it is also true that in her first answer Mary F. Buford asked that the defects in the title to the land in dispute should be cured, as she was anxious for a specific execution, and only asked a rescission when it should turn out that she could not get a good title, and she never asked for an unconditional rescission till after the reconveyances made by N. J. Smith and wife, and Lizzie A. Smith and husband, and Harriet Rowland, and after Geo. J. Rowland’s heirs had been brought before the court. In other words, her title was perfected at her request before she amended her pleadings and asked for a rescission.
We are clearly of opinion that George J. Rowland was not guilty of actual fraud in his contract of sale of the land in dispute to Mary F. Buford; and if he was not, could his vendee in possession resist the payment of the purchase-price by averments of defects in the title ?
In Simpson, &c. v. Hawkins, &c., 1 Dana, p. 303, this court said that “ Where contracts are executed by conveyances, we are of opinion that there can be no rescission of a contract in any case unless it has been tainted by actual fraud. If the warranty of title has been broken, so as to entitle the vendee to damages, or if the vendee be entitled to damages upon a *688 covenant of seizin, he may apply to the chancellor, where the vendor is insolvent, to set off those damages against the unpaid purchase-money.”
The ground upon which the chancellor interferes in such cases is the prevention of the irreparable mischief which otherwise might result from the insolvency. He ought not to act upon the principle of rescinding the contract. On the contrary, he should affirm the contract, and secure to the party such damages as he might be entitled to for a partial or total violation thereof by the obligor. If a deed of conveyance be executed for any quantity of land, and the vendee is put into possession, thereafter, in case he loses half or three fourths of the land, the law only authorizes a recovery, upon the warranty, of damages commensurate with the loss. The chancellor must follow the law, and not lay hold of such a partial loss, and require the vendor to take back the portion of the land saved, and return the purchase-money for that, under the idea of rescinding contracts.
In Duvall v. Parker, 2 Duvall, 183, this court decided that a vendee in possession under an executory contract should always ask specific execution of the contract, if a good title can be procured in a reasonable time, and should ask for a rescission only when it is ascertained that such a title can not be had. And in Butler v. Miller, 15 B. Mon. 627, this court decided that where a vendee accepted a deed, and was put in possession under it, and his possession had not been disturbed, and there had been no actual fraud, there could be no rescission of the contract at his.instance. In Taylor v. Lyon, 2 Dana, this court ruled that defect of title, where there had been no fraud in the sale, the contract executed, and no eviction, is no ground for rescission, or injunction against the collection of the purchase-money. The grantee is presumed to rely on the covenants inserted in the conveyance, and must abide by his legal remedy, unless there are such circumstances connected with the defect *689 of title as would hinder the vendee from obtaining redress at law, and in such a case he can obtain an injunction against the collection of the purchase - money until a decision upon the title can be had.
It is said, however, that this case should have been dismissed as to Mary F. Buford’s administrator, because no affidavit and demand were made of appellee’s claim, as required by law. As this suit was commenced in the lifetime of Mary F. Buford, no demand was necessary, and the record shows that the affidavit to the justice of the- claim and that it contained no usury, etc., was duly made in the fall of 1874.
At the time of the trial of this cause in the court below, Mary F. Buford’s devisee was in possession under a deed with covenants of general warranty, and under deeds confirming the title made by all the persons who had any interest in the disputed land for forty years.
George J. Rowland first bought for his daughter, and then his wife bought it from her, and he and his wife conveyed to Mary F. Buford and put her in possession; and his vendor, N. J. Smith and wife, and Lizzie Rowland, his daughter, and Mrs. Harriet Rowland all confirm the title to Buford; and we are constrained to the opinion that no future apprehension of danger to the title need be indulged. Besides, the parties interested in the question of rescission are not before this court. The suit to rescind the contract was against Harriet Rowland, the heirs of George J. Rowland, and others, and none of them are parties to this appeal, which is against Guthrie alone.
Had the contract been executory and the defect of title apparent, the court after such a lapse of time, coupled with the great fall in the price,of the land, may have been authorized by the authorities to refuse the execution of the contract at the -instance of the vendee. But this is an executed contract, and a different rule applies.
*690 There can be no doubt but that George J. Rowland and his wife paid their money for the land and thought they were getting a good title; indeed we see no evidence of actual fraud in the case.
Wherefore the judgment is affirmed on the original and cross-appeal.
Judge Pryor did not sit in this case.
On the rehearing Judge Coper delivered the following additional opinion of the court.